### GLASBY and others *vs.* MORRIS and others.

1. The owner of lands abutting on a public street, is presumed to own the land in front to the middle of the street, subject to the easement of the public highway.

2. The municipal government of the city of Elizabeth had not, until 1863, the power to construct drains or sewers under the public streets. It was charged with keeping them in repair, and no one could, without its permission, open or disturb the surface of the streets in front of the land of another.

3. A permit to open a street for the purpose of laying a drain, is not to be construed as a grant of a right to lay and continue a drain, but simply as what it imports to be, a license to disturb the surface of the street.

4. The person laying a drain by such permit, has no right to maintain it as against the owner of the land on that side of the middle of the street on which the drain is.

This cause was brought on for final hearing, upon bill, answer, and proofs.

*Mr. F. B. Chetwood,* for complainants.

*Mr. R. S. Green,* for defendants.

---

* Decree affirmed, *post p.* 518.

THE CHANCELLOR.

The defendant, Justus Morris, is the owner of a house and lot on the east side of Broad street, in the city of Elizabeth.

The municipal government have recently constructed a public sewer in Broad street, running in front of Morris' lot, on the west side of the middle line of the street, and granted to Morris permission to connect his lot with it, by a proper drain pipe.

Morris, with the other two defendants, whom he employed to aid him in laying down his drain pipe to connect his lot with the public sewer, cut through and partially destroyed a drain that had been constructed by the complainants, or some of them, in the year 1852. This drain was in Broad street, several feet below the surface, and was laid in front of the lot of Morris, some distance easterly of the middle line of the street; and it was here, on the part of the street in front of his lot, on the adjoining half of the street, that the drain claimed by the complainants was injured.

The first point to be established by the complainants, to entitle them to any redress is, that they, or some of them, had a right, as against Morris, to maintain a drain in the public street in front of his lot. It is a well established principle, that the owner of land bounded on a street or highway, is presumed to own the soil in front of his lot to the middle of the street, subject to the easement of the public highway.

In this case, nothing appears to rebut this presumption in favor of Morris, either in the pleadings or evidence. For this suit, then, he must be considered the owner of the adjacent half of the street.

The complainants claim a right to maintain this sewer here, on the ground that it was constructed by them in March, 1852, by the permission of the municipal government of the city, then the borough, of Elizabeth, alleging that it then had the control of the streets, and power to au-

Glasby *v.* Morris.

thorize them to be opened, and to authorize the construction of drains and sewers therein.

The defendants deny the power of the municipal government, at that time, to construct sewers in the streets, or to authorize any one to construct them; and also deny that they authorized the complainants to construct this drain.

I do not find, in any charter of the borough of Elizabeth, or any act relating thereto, prior to the act of 1863—the present city charter—a grant giving power to the mayor, aldermen, and commonalty, to construct sewers, or to authorize any one else to construct them.

The act of March 4th, 1847, gave power to compel the owners to flag, pave, curb, gutter, and improve the streets, and this is a strong argument that the power did not, before then, exist. If that did not, the more extensive power of building sewers most probably did not; but it is a power no municipal corporation can have but by grant of the sovereign, and such grant nowhere appears.

The act of 1847, with the general powers of the old charter, gave it control of the highways, and made it, to a certain extent, responsible for their repairs. No one could disturb the surface of the streets without consent of the municipal authority. Such permission would justify the opening as against the public, but it would not, as against the owner of the soil, when it was done for matters not connected with the repair or improvement of the highway.

The permission granted by the mayor, aldermen, and commonalty, as given in evidence, shows that such was their understanding of their powers, and the extent of the right conceded. It is a permission "to open Broad street for the purpose of laying a drain." All they got was permission to open the street; even if the municipality had the power to grant the right to build a sewer, it was not granted.

The drain of the complainants was, therefore, laid without any lawful authority as against Morris or those under whom he claims; they were trespassers, and have acquired no rights in his land that this court can protect.

The bill must be dismissed with costs.